IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CURIUM US LLC,<br><br>       Plaintiff,<br><br>v.<br><br>NUSANO, INC.; LAUREN RADFORD; and CHRISTOPHER LOVELESS,<br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO INCORPORATE**<br><br>Case No. 2:25-cv-00785-JNP-JCB<br><br>Chief District Judge Jill N. Parrish |

Defendants Nusano Inc., Lauren Radford, and Christopher Loveless move to dismiss Plaintiff Curium US LLC's complaint alleging trade secret misappropriation, unfair competition, and tortious interference. *See* ECF Nos. 44, 46. For the following reasons, the court GRANTS the motions to dismiss.

## BACKGROUND[1]

This case involves alleged trade secrets concerning "the process and equipment relating to the manufacture of radioisotopes and their use in radiopharmaceuticals." ECF No. 1 ¶ 1. Plaintiff Curium US LLC is a leading producer of radiopharmaceuticals and their component isotopes. *Id.*

---

[1] The court recites the facts as alleged in the complaint and any documents incorporated by reference. *See* ECF No. 1; *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1150 n.11 (10th Cir. 2023) ("A court may consider (1) 'documents that the complaint incorporates by reference,' (2) 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity,' and (3) 'matters of which a court may take judicial notice.'" (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)).

¶ 2. Defendant Nusano, Inc. also produces and sells radioisotopes to pharmaceutical companies. *Id.* ¶¶ 3–5. The remaining defendants are two former employees of Plaintiff who now work for Defendant Nusano: Lauren Radford, Ph.D., and Christopher Loveless, Ph.D. *Id.* ¶¶ 6–7.

Radford, now Associate Director of Radiochemistry R&D at Nusano, worked at Curium for more than five years developing and supporting Curium's radioisotope production units. *Id.* ¶ 6. She ended her tenure as a Manager in the R& D unit. *Id.* ¶ 49. Throughout her time at Curium, Radford thrice entered into Confidentiality and Inventions Agreements, which included a nondisclosure obligation for Curium's trade secrets. *Id.* ¶¶ 53–54; *see* ECF No. 1-1 (2018 Radford Agreement); ECF No. 1-2 (2019 Radford Agreement); ECF No. 1-3 (2023 Radford Agreement).

Loveless, now Associate Director of R&D at Nusano, worked at Curium for more than three years, also within the radioisotope production units. ECF No. 1 ¶ 7. He ended his tenure at Curium as a Manager of the Analytical Chemistry unit. *Id.* ¶ 68. Throughout his time at Curium, Loveless twice entered into Confidentiality and Inventions Agreements, which included a nondisclosure obligation for Curium's trade secrets. *Id.* ¶¶ 71–72; *see* ECF No. 1-4 (2020 Loveless Agreement); ECF No. 1-5 (2022 Loveless Agreement).

Relevant to this matter are three of Curium's radiopharmaceutical products, all of which are related to or used as "diagnostic agents in imaging patients to detect diseases." ECF No. 1 ¶¶ 22, 29. The first, Detectnet™, was the first commercially available copper-64 (or, Cu-64) diagnostic agent in the United States. *Id.* ¶ 20. Curium also produces a so-called "Copper CU-64 PSMA I&T Injection." *Id.* ¶ 29. The last relevant product, an "Ioflupane I 123 Injection," is another agent. *Id.* ¶ 21. Curium has received FDA approval on Detectnet™ and its Ioflupane I 123 Injection. *Id.* ¶¶ 20–21.

Curium alleges that the trade secrets at issue "relate to the production of radioisotopes, including at commercial scale and with properties suitable for use in radiopharmaceuticals, and the use of those radioisotopes in radiopharmaceuticals." *Id.* ¶ 26. More specifically, the trade secrets:

- Relate to "the commercial scale manufacture of Cu-64 and its use in Detectnet™" and "the manufacture of Cu-64 for use with PSMA I&T compounds";

- Relate to "the commercial scale manufacture and use of iodine-123" and the "Ioflupane I 123 injection"; and

- Include "unique and technologically and economically advantaged processes and information that [Curium] developed and refined, including proprietary equipment design and configuration, related to the commercial scale production of radioisotopes and radiopharmaceuticals, including but not limited to Cu-64, Detectnet™, Copper Cu-64 PSMA I&T Injection, and Ioflupane [I 123] injection" (Curium's "Confidential Processes"). *Id.* ¶¶ 27–29.

According to Curium, its Confidential Processes are "not made available to the public, and are not generally known to, or readily ascertainable by proper means." *Id.* ¶ 32. Nevertheless, Curium alleges that while "[c]ertain aspects of Curium's work have been patented," "numerous other aspects of Curium's Confidential Processes were developed and/or identified or used during Radford's and Loveless's employment and are not disclosed in patents or publications." *Id.* ¶ 32.

Curium alleges that both Radford and Loveless had intimate knowledge of and access to these trade secrets. *Id.* ¶¶ 49–81. Curium also alleges that the non-disclosure agreements that each employee signed required them to inform Curium at the time of notice of separation of the identity of their new employer. *Id.* ¶ 91. For example, when both employees had considered leaving in May

2022, they both had informed Curium of the identity of the prospective employer. *Id.* But when both left Curium in September 2023 for Nusano, neither informed Curium of Nusano's identity. *Id.* ¶ 92.

Curium eventually became aware that Radford and Loveless were employed by Nusano in roles similar to their roles at Curium. *Id.* ¶ 97. On December 20, 2023, Curium sent letters to both individuals. *Id.* ¶ 98. The letters sought to remind them of their "ongoing obligations and duties" to Curium pursuant to the non-disclosure agreements, requested information regarding their roles at Nusano, and asked for assurances that neither would violate their agreements with Curium. *Id.*; ECF No. 1-6 (Letter to Radford); ECF No. 1-7 (Letter to Loveless). Curium also sent a letter to Nusano, informing Nusano of both employees' agreements with Curium and also seeking assurances from Nusano. ECF No. 1 ¶ 99; ECF No. 1-8 (Letter to Nusano). Nusano responded in February 2024, noting that Nusano was "not currently planning to work on" copper-64. ECF No. 1 ¶ 101; ECF No. 1-9 at 4 (email correspondence between Curium and Nusano). Nusano reiterated a few weeks later that it was "not contemplating any work on Iodine or Cu-64." ECF No. 1 ¶ 101; ECF No. 1-9 at 2.

Following this exchange, in April 2024, Nusano, Curium, Radford, and Loveless signed a Memorandum of Understanding ("MOU"). ECF No. 1 ¶ 102. The MOU stated that Nusano would not require either employee to work with iodine or copper-64 through September 8, 2024. ECF No. 45-1 at 2. It further stated that:

> The Former Employees acknowledge and agree that they do not have any Confidential Information, as defined in the Agreements, in electronic and/or hard-copy in the [sic] possession, custody, or control. The Former Employees further acknowledge that they have not disclosed, indirectly or directly, to any other person or organization, or used or permitted any use of, any of Curium's Confidential Information. Nusano agrees that it has not received, directly or indirectly, any Confidential Information of Curium from the Former Employees. Nusano further

agrees not to request or otherwise encourage, either directly or indirectly, the Former Employees to subsequently disclose any Confidential Information of Curium.

*Id.*

In March 2024, Nusano announced a radiochemistry laboratory, with a manufacturing facility under construction. ECF No. 1 ¶ 103. In April 2025, Nusano announced that it had entered into a commercial-scale copper-64 supply agreement with a pharmaceutical company. *Id.* ¶ 105. In June 2025, Nusano announced another supply agreement of copper-64, as well as an agreement for iodine-125. *Id.* ¶¶ 106–07.

In August 2025, Curium again sent letters to Radford, Loveless, and Nusano. *Id.* ¶ 108. Curium sought assurances that Radford and Loveless had not been nor would be involved in any way in Nusano's efforts to develop or commercialize copper-64 processes or products. *Id.* Defendants did not provide any assurances, however. *Id.* ¶ 109.

Curium now sues for "threatened misappropriation of trade secrets" under both the Utah Uniform Trade Secrets Act ("UUTSA") and the Defend Trade Secrets Act ("DTSA"), unfair competition, and tortious interference. *Id.* ¶ 1. Specifically, Plaintiff alleges that "all Defendants have at least threatened future violations of the UUTSA and the DTSA to the real, immediate, and ongoing detriment of Plaintiff." *Id.* Defendants have moved to dismiss the claims. *See* ECF Nos. 44, 46.

## LEGAL STANDARD

Defendants argue that Curium's complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

## ANALYSIS

Defendants raise multiple arguments in their motions to dismiss. They have also moved to incorporate various extrinsic documents by reference or judicial notice. *See* ECF No. 45. The court first addresses the motion for incorporation before addressing Defendants' motions to dismiss.

## I.    Request for Incorporation by Reference and Judicial Notice

Defendant Nusano asks the court to consider three documents that it claims are incorporated by reference into the complaint. Alternatively, Nusano argues that some of the documents are judicially noticeable pursuant to Federal Rule of Civil Procedure 201.

The three documents are (1) the Memorandum of Understanding ("MOU") signed by the parties; (2) a December 6, 2022 Patent (No. 11,521,762 B2); and (3) a January 21, 2000 patent application (No. WO 00/43110A). ECF No. 45 at 2.

When reviewing the sufficiency of a complaint, "[a] court may consider (1) 'documents that the complaint incorporates by reference,' (2) 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity,' and (3) 'matters of which a court may take judicial notice.'" *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1150 n.11 (10th Cir. 2023) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)).

Here, while not included as an exhibit to the complaint, the MOU is clearly incorporated by reference and central to the complaint. In the complaint, Curium cites to the MOU and attaches

exhibits to the complaint that reference the MOU. *See, e.g.*, ECF No. 1 ¶ 102; ECF No. 1-9; ECF No. 1-10. Further, the existence and contents of the MOU are central to Curium's claims, with the MOU closely connected to Curium's allegations that Defendants provided false assurances to Curium regarding their work. *See* ECF No. 1 ¶ 102 ("In reliance upon these representations, Curium agreed to proceed with a Memorandum of Understanding . . . with Defendants, pursuant to which Curium would refrain from taking any further action at that time."); *id.* ¶ 185 ("Nusano's actions of interfering with the Radford and Loveless Agreements, making false assurances to Curium regarding its interest in Cu-64, upon which Curium relied in its decision to refrain from taking any further action at that time . . . ."). Curium does not dispute the MOU's authenticity either. The court will thus consider the MOU in ruling on the motions to dismiss. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) (noting that "[i]f the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied").

The other two documents—the issued patent and the patent application—are not sufficiently referenced in the complaint to warrant inclusion under the incorporation-by-reference doctrine. Neither document is referenced specifically or even by implication. Rather, the complaint just generally and briefly alludes to the existence of patents. *See, e.g.*, ECF No. 1 ¶ 25 ("These investments have led to inventions recognized by the award of patents from the U.S. Patent and Trademark Office, including more than 10 patents on inventions directed to Cu-64 granted or allowed to date, as well as extensive and valuable trade secrets."); *id.* ¶ 32 ("Certain aspects of Curium's work have been patented; however, numerous other aspects of Curium's Confidential Processes were developed and/or identified or used during Radford's and Loveless's employment and are not disclosed in patents or publications.").

Moreover, the two specific patent documents are not central to Curium's claims. Defendant Nusano argues that the patents are central because Curium in part relies on the existence of its numerous patents to show "substantial investment" and the existence of trade secrets. ECF No. 45 at 4. But the complaint does not refer to *these* specific documents, nor are these documents the only documents that could support those allegations. Defendant instead has chosen these two documents out of a universe of many, underscoring their lack of centrality.

The court must still consider if it is appropriate to take judicial notice of the two patent documents. Nusano argues courts routinely take judicial notice of patents and that these patent documents "give critical context to what is publicly known, which by definition limits the scope of what Curium could plausibly allege as a trade secret." ECF No. 60 at 9. They accordingly request that the court take notice of the two documents and the information contained therein. ECF No. 45 at 5. Curium responds that judicial notice would be inappropriate because neither patent document was referenced in the complaint. ECF No. 57 at 10.

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b). The court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Civ. P. 201(c).

Nusano is correct that courts sometimes take judicial notice of patent documents like these, even if they are not explicitly referenced in the complaint.[2] *Anderson v. Kimberly-Clark Corp.*,

---

[2] This is, of course, not universally true. *See, e.g.*, *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*, 564 F. Supp. 3d 1126, 1140 (D. Utah 2021) ("Because none of the [patent

570 F. App'x 927, 932 n.3 (Fed. Cir. 2014) ("It is also well-established that a court may take judicial notice of patents or patent applications."); *see St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("And, generally, that which may be judicially noticed need not be pleaded.").

Nevertheless, the court finds that it would be inappropriate to take judicial notice of these documents at this stage. "Judicial notice allows the court 'to accept a matter as proved without requiring the party to offer evidence of it.'" *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1298 (10th Cir. 2025) (quoting *United States v. Estep*, 760 F.2d 1060, 1063 (10th Cir. 1985)). This is significant: "taking judicial notice 'preclude[s] a party from introducing contrary evidence and, in effect, direct[s] a verdict against him as to the fact noticed.'" *Fuqua*, 157 F.4th at 1298 (quoting *United States v. Boyd*, 289 F.3d 1254, 1258 (10th Cir. 2002)). Thus, even with documents that could be classified as public records, courts should be mindful that those documents satisfy the other requirements detailed in Rule 201(b). *See Fuqua*, 157 F.4th at 1298.

Here, Nusano's case for judicial notice comes up short. Nusano asks the court to take notice of both the patent documents and their contents. Critically, Nusano asks this in order to limit the scope of what Curium could allege to be a trade secret in its complaint. But while the existence of these documents is not "subject to reasonable dispute," the information contained within them *is* subject to reasonable dispute, at least as it pertains to the scope of what information Curium has put into the public domain. The inquiry that Nusano asks the court to undertake is not a simple perusal of those documents for well-known, uncontestable adjudicative facts of the kind that Rule

documents] are referenced in the [complaint], it is not appropriate to use judicial notice to consider their contents . . . .").

9

201 contemplates; rather, the court would be required to interpret the content of these documents and make factual and legal conclusions on how Curium's trade secret claims might be limited. *See*, *e.g.*, *id.* at 1299 (noting that contents of dash- and body-camera videos were subject to reasonable dispute); *Maturin v. T-Mobile USA, Inc.*, No. 24-CV-1125 JCH/SCY, 2025 WL 1642420, at *3 (D.N.M. June 10, 2025) (refusing to take judicial notice of documents where Plaintiff asked the court to make factual and legal conclusions from the documents); *Xlear, Inc. v. STS Health, LLC*, No. 2:14-CV-00806-DN, 2015 WL 8967574, at *3 (D. Utah Dec. 15, 2015) (refusing to take judicial notice of documents where the party did not identify the specific statements or facts of which the court should take notice).

Furthermore, where the purpose of the evidence that a party seeks to bring is "to undermine and attack the veracity of the complaint," judicial notice of that evidence is "inappropriate" at the motion to dismiss stage. *See Fuqua*, 157 F.4th at 1299; *id.* (finding it "would be improper" for the court "to use extrinsic evidence to question 'the truth or falsity' of the allegations" at the motion to dismiss stage); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery."). And though Nusano asserts that the documents provide critical context, "critical context" is an insufficient justification to override "the general rule that a court may consider 'only the allegations within the four corners of the complaint and cannot consider other pleadings or external allegations.'" *Precision Weather Sols., Inc. v. Hudson Ins. Co.*, No. 24-2258-DDC-GEB, 2025 WL 2676453, at *12 (D. Kan. Sept. 18, 2025).

The court accordingly denies the motion with respect to the two patent documents. It grants the motion with respect to the Memorandum of Understanding.

## II.      Motions to Dismiss

Curium asserts four claims against Nusano, for tortious interference, unfair competition, and misappropriation of trade secrets under both the Defend Trade Secrets Act and the Utah Uniform Trade Secrets Act. Defendants argue that each of Curium's claims should be dismissed. *See* ECF No. 44.

### A.      Tortious Interference

Defendants argue that Curium's tortious interference claim should be dismissed because (1) it is preempted by the Utah Uniform Trade Secrets Act ("UUTSA") and (2) Curium failed to plausibly state a claim for relief.

To prevail on a tortious interference claim, a complaint must allege (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff. *Harvey v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 2017 UT 75, ¶ 71, 416 P.3d 401 (citing *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553).

The UUTSA contains a preemption provision stating that it "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Utah Code § 13-24-8(1). In interpreting the scope of the UUTSA's preemption provision, the Utah Court of Appeals held that "a claim is preempted to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information." *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 48, 274 P.3d 317, 331. Accordingly, "if proof of a non-[UUTSA] claim would also simultaneously establish a

11

claim for misappropriation of trade secrets, it is preempted irrespective o[f] whatever surplus elements of proof were necessary to establish it." *Id.* (citation omitted). "Stated differently, if the [non-UUTSA] claim fails without the allegations regarding misuse of information, the [UUTSA] preempts it." *Giles Constr., LLC v. Tooele Inventory Sol., Inc.*, No. 2:12-cv-37, 2015 WL 3755863, at *6 (D. Utah June 16, 2015). "However, to whatever extent that a claim is 'based upon wrongful conduct independent of the misappropriation of trade secrets' or otherwise confidential information, it is not preempted." *CDC Restoration*, 2012 UT App 60, ¶ 48 (citation omitted).

In its complaint, Curium alleges that Nusano tortiously interfered with the Radford and Loveless non-disclosure agreements, which are meant to "prohibit Radford and Loveless from disclosing Curium's trade secrets or confidential information." ECF No. 1 ¶ 171. Curium asserts that the improper means Nusano used to interfere with these agreements include: (1) engaging in "predatory hiring practices" exemplified "by hiring Radford and Loveless with the intent to obtain access to Curium's trade secrets and confidential information," *id.* ¶ 180; (2) "making false assurances to Curium about its interest and intentions regarding the development and manufacture of Cu-64 for use in radiopharmaceuticals," *id.* ¶ 181; (3) "inducing Radford and Loveless to undertake job duties . . . that substantially overlap with the duties they performed at Curium and that would require the violation of . . . contractual obligations to protect and not use or disclose Curium's trade secrets and confidential information," *id.* ¶ 182; (4) "refusing to substantively respond to Curium's concerns or provide reasonable assurances," *id.* ¶ 185; and (5) receiving and/or using any of Curium's trade secrets or confidential information, *id.* ¶ 186. Curium alleges that this alleged interference caused injury, including "knowledge transfer," or "the loss of proprietary and confidential information for which it can never be compensated." *Id.* ¶ 187.

12

On these allegations, Curium's tortious interference claim is preempted by the UUTSA. The sole claim of injury relates to the alleged misappropriation of trade secrets. Without that allegation of injury, the claim fails. *See Applied Predictive Techs., Inc. v. MarketDial, Inc.*, 598 F. Supp. 3d 1264, 1289 (D. Utah 2022) (holding the same on similar facts). In fact, every single allegation relating to this claim relates to the misappropriation of trade secrets claim. As Defendants argue, the tortious interference claim here is "trade-secret misappropriation by another name." ECF No. 44 at 13.

Even if the court were to find that the claim were not preempted, Curium has also failed to identify any plausible improper means. "To establish . . . improper means, a plaintiff must show 'that the defendant's means of interference were contrary to statutory, regulatory, or common law or violated an established standard of a trade or profession.'" *Harvey*, 2017 UT 75, ¶ 71 (quoting *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 20, 116 P.3d 323). In other words, the defendant's conduct must be "independently tortious or wrongful." *C.R. England v. Swift Transportation Co.*, 2019 UT 8, ¶ 45, 437 P.3d 343. The Utah Supreme Court has provided a non-exhaustive list of conduct that that would constitute improper means: "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood[s]." *Id.* ¶ 42.

Curium argues that the various alleged improper means it listed fall into the "deceit and misrepresentation" bucket. ECF No. 56 at 27. Specifically, Curium highlights that Nusano made false assurances and "inducing representations" with regards to its plans to pursue Cu-64 and Radford and Loveless's continued employment. *Id.* But the assurances that Curium points to were ultimately memorialized in the Memorandum of Understanding and time-limited. *See* ECF No. 45-1 at 2. So while Curium alleges the assurances were false and a product of deceit and

misrepresentation, the court is unable to find the same, even when reading the complaint (and the Memorandum of Understanding incorporated by reference) in the light most favorable to Curium. And any remaining alleged improper means are either conclusory, not independently tortious or wrongful, or re-allegations of the act of interference itself, which is insufficient to satisfy the improper means requirement. *See Smart Surgical, Inc. v. Utah Cord Bank, Inc.*, No. 2:20-CV-00244-JNP, 2021 WL 734954, at *3 (D. Utah Feb. 25, 2021).

The court accordingly dismisses Curium's tortious interference claim.

### B.    Unfair Competition

Defendants also move to dismiss Curium's unfair competition claim. Similar to the tortious interference claim, Defendants argue that the unfair competition claim should be dismissed because (1) it is preempted by the Utah Uniform Trade Secrets Act and (2) Curium failed to plausibly state a claim for relief.

As stated above, under the UUTSA, "a claim is preempted to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information." *CDC Restoration*, 2012 UT App 60, ¶ 48.

To plead an unfair competition claim under Utah Code § 13-5a-102(4), a party must allege that the defendant committed "an intentional business act or practice" that "is unlawful, unfair, or fraudulent" and "leads to a material diminution in value of intellectual property." Utah Code § 13-5a-102(4); *Vendr, Inc. v. Tropic Techs., Inc.*, No. 2:23-CV-165-DAK-DAO, 2023 WL 8789297, at *5 (D. Utah Dec. 19, 2023). In this context, the act or practice must also be a "predatory hiring practice," not simply the "departure and hiring of an employee by a competitor." Utah Code § 13-5a-102(4).

In its complaint, Curium alleges that "[p]rior to Nusano's acts of unfair competition, Radford and Loveless had previously complied with their contractual obligations to Curium . . . ." ECF No. 1 ¶ 156. It alleges that "[i]n connection with Nusano's predatory hiring of Radford and Loveless away from Curium in 2023 as part of Nusano's unfair competition against Curium and inconsistent with their conduct in 2022 prior to Nusano's involvement, Radford and Loveless failed to comply with their [non-disclosure agreements] to Curium when they did not give notice to Curium" of their new jobs. *Id.* ¶ 157. It alleges that "Defendants have demonstrated a pattern of interfering with and violating the Radford and Loveless [non-disclosure agreements], providing false assurances, and refusing to substantively respond to Curium's concerns or provide reasonable assurances." *Id.* ¶ 165.

Ultimately, it alleges that "Nusano has engaged in unfair competition by, among other things, implementing a targeted and predatory campaign to recruit key Curium employees Radford and Loveless, with known expertise in Cu-64 production development, interfering with their obligations to Curium, making false assurances to Curium, and participating in a scheme to acquire a 'knowledge transfer' from Radford and Loveless to unfairly compete with Curium without authorization from Curium." *Id.* ¶ 166. It alleges that it "has suffered and will suffer economic and immediate and irreparable harm to its business, including a material diminution in the value of its intellectual property that Nusano is obtaining from Curium's former employees." *Id.* ¶ 167.

Like the tortious interference claim, this claim is also preempted by the UUTSA. The claim relies on an allegedly predatory hiring campaign. This campaign is only predatory, according to the complaint, because it seeks to make Radford and Loveless misappropriate the trade secrets and confidential information to which they have access. In other words, this claim repeats Curium's primary trade secret misappropriation theory. Without these allegations that relate to the alleged

15

misappropriation of trade secrets, there is no plausible predatory campaign that has been alleged and thus no viable unfair competition claim. *See* Utah Code § 13-5a-102(4) (noting that "departure and hiring of an employee by a competitor" is not predatory); ECF No. 1 ¶ 116 (complaint alleging that Nusano hired Radford and Loveless for "technical, managerial roles"). Ultimately, "[t]he codependence between these claims chafes against the central preemption goal of [UUTSA]—'to preserve a single tort action under state law for misappropriation of a trade secret.'" *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 679 F. Supp. 3d 1196, 1214 (D. Utah 2023).

The unfair competition claim faces other issues as well. First, the preemption problem extends to the allegations of injury: the alleged injury of a material diminution of the value of Curium's intellectual property specifically relates to the trade secrets Nusano allegedly is obtaining from Radford and Loveless. Furthermore, the alleged injury is too conclusory to support a plausible claim. *See Asphalt Sys., Inc. v. Am. Gilsonite Co.*, No. 2:24-CV-00902-DBB-DBP, 2025 WL 1663323, at *4 (D. Utah June 12, 2025) (demanding additional factual allegations to support a claim of material diminution); *Bedrock Quartz Surfaces, LLC v. Rock Tops Holdings LLC*, No. 2:23-CV-00310, 2023 WL 8481417, at *5 (D. Utah Dec. 7, 2023) (same); *Rich Media Club, LLC v. Mentchoukov*, No. 2:11-CV-1202 TS, 2012 WL 1119505, at *4 (D. Utah Apr. 3, 2012) (same).

The court accordingly dismisses Curium's unfair competition claim.

### C.    Misappropriation of Trade Secrets

Finally, Defendants argue that Curium's trade secrets misappropriation claims should be dismissed. Defendants argue that Curium fails to state a claim for misappropriation under either the Defend Trade Secrets Act ("DTSA") or the Utah Uniform Trade Secrets Act ("UUTSA") because (1) Curium failed to plead a plausible trade secret and (2) Curium's claims "rest[] only on a 'threatened' misappropriation theory." ECF No. 44 at 27. Defendants also argue that the court

should dismiss Curium's request for damages because damages are not an authorized remedy for threatened misappropriation.

The court first addresses whether Curium has plead a plausible trade secret as part of its misappropriation claims. The UUTSA and DTSA define what a trade secret is in a similar manner, and courts often undertake a singular analysis when considering UUTSA and DTSA trade misappropriation claims. *Crystal Tones, LLC v. Pyromatics Corp.*, No. 2:25-CV-235-DAK-DBP, 2026 WL 353520, at \*13 (D. Utah Feb. 9, 2026) ("Because 'a claim for trade secret misappropriation under the DTSA and [UUTSA] closely resemble each other,' courts typically address both claims with the same analysis.").

Under the UUTSA, "[t]o establish a claim for misappropriation of a trade secret, the proponent of the trade secret must show '(1) the existence of a trade secret, (2) communication of the trade secret to [the defendant] under an express or implied agreement limiting disclosure of the secret, and (3) [defendant]'s use of the secret that injures [the proponent].'" *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 15, 274 P.3d 317 (quoting *Water & Energy Sys. Tech., Inc. v. Keil*, 1999 UT 16, ¶ 9, 974 P.2d 821). A trade secret is defined as "a formula, pattern, compilation, program, device, method, technique, or process" that "(1) derives economic value from not being known or readily ascertainable by others, and (2) is the subject of reasonable efforts to maintain its secrecy." *CDC Restoration*, 2012 UT App 60, ¶ 16.

Under the DTSA, to establish a claim for misappropriation of trade secrets, a plaintiff must show: "(1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means." *Big Squid, Inc. v. Domo, Inc.*, No. 2:19-CV-193, 2019 WL 3555509, at \*12 (D. Utah Aug. 5, 2019). A trade secret is defined

17

to include "'all forms and types of [tangible or intangible] information' that the owner 'has taken reasonable measures to keep . . . secret,' and that 'derives independent economic value' from remaining a secret.'" *Id.* (quoting 18 U.S.C. § 1839(3)).

Curium alleges its trade secrets relate to its Confidential Processes and other information that are "secret, valuable in the industry, and [have] not been disclosed to anyone outside of Curium." ECF No. 1 ¶ 127. Defendants assert in response that Curium failed to specifically identify its purported trade secrets under either the DTSA or UUTSA. ECF No. 44 at 22. Rather, Defendants asserts the complaint just "generically lists known chemical processes, pharmaceutical compounds, and standard laboratory techniques and nomenclature." *Id.* They assert that "Curium's description of common categories of standard operating procedures and chemistry techniques" do not "plausibly allege that Curium secretly knows anything more than its peers in the radiopharmaceutical industry." *Id.* at 23.

As part of this argument, Defendants argue for a heightened pleading standard. They cite, for example, a recent Tenth Circuit opinion discussing a trade secrets claim in the context of summary judgment. *See Double Eagle Alloys, Inc. v. Hooper*, 134 F.4th 1078, 1086, 1089 (10th Cir. 2025). In *Double Eagle Alloys*, the district granted summary judgment to the defendants, holding that "Double Eagle failed to identify its alleged trade secrets with sufficient particularity and clarity to proceed to trial." *Id.* at 1086. In affirming the district court, the Tenth Circuit there stated that a "plaintiff should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." *Id.* at 1089; *see also Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 641–42 (10th Cir. 2022) (when reversing a denial of a renewed motion for judgment as a matter of law, noting that "[w]hile the Utah Uniform Trade Secrets Act does not have a

18

'particularity requirement,' '[t]he trade secret at issue . . . must be defined in a manner that allows the fact-finder to determine if a trade secret exists under the statute'"). This articulation has also since been applied in the preliminary injunction context. *See, e.g.*, *Ramaco Carbon, LLC & Ramaco Resources, Inc. v. Alex J. Moyes*, No. 26-CV-104-R, 2026 WL 1990777, at *6 (D. Wyo. May 5, 2026). Defendants rely on this precedent, and out-of-circuit precedent, to suggest that Curium must plead its trade secrets with a heightened "reasonable" or "sufficient" particularity at the motion to dismiss stage. *See* ECF No. 44 at 21–22.

The court disagrees. In the motion to dismiss context, courts in the Tenth Circuit have consistently applied the general pleading standard with respect to misappropriation claims and trade secrets, and Defendants' cited case law does not direct otherwise. *See, e.g.*, *LS3 Inc. v. Cherokee Nation Strategic Programs, L.L.C.*, No. 21-1385, 2022 WL 3440692, at *5 (10th Cir. Aug. 17, 2022) (unpublished) ("Under *Iqbal*, because LS3 failed to allege what trade secrets the Cherokee Defendants misappropriated, its allegations 'stop[ ] short of the line between possibility and plausibility of entitlement to relief.'"); *Vendr, Inc. v. Tropic Techs., Inc.*, No. 2:23-CV-165-DAK-DAO, 2023 WL 8789297, at *3 (D. Utah Dec. 19, 2023) (applying the Rule 8 pleading standard); *Surgenex, LLC v. Predictive Therapeutics, LLC*, 462 F. Supp. 3d 1160, 1171 (D. Utah 2020), *on reconsideration in part*, No. 2:19-CV-295-RJS-DAO, 2020 WL 8514831 (D. Utah July 17, 2020) (same).

Curium has met its burden here with respect to pleading its trade secrets at the motion to dismiss stage. And even considering the standard outlined in *Double Eagle Alloys*, Curium's complaint provides Defendants with a sufficient level of "concrete identification to prepare a rebuttal" at this stage. *Double Eagle Alloys*, 134 F.4th at 1089 (quoting *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020)).

19

In the complaint, Curium's Confidential Processes that make up the alleged trade secrets include "unique and technologically and economically advantaged processes and information that [Curium] developed and refined, including proprietary equipment design and configuration, related to the commercial scale production of radioisotopes and radiopharmaceuticals, including but not limited to Cu-64, Detectnet™, Copper Cu-64 PSMA I&T Injection, and Ioflupane [I 123] injection." ECF No. 1 ¶¶ 27–29. While Curium might refer to "common categories of standard operating procedures and chemistry techniques" in describing its alleged trade secrets, as Defendants allege, it is always specifically in relation to Curium's copper and iodine products, which are clearly and concretely identified. In other words, the methods, techniques, or processes that Curium employs to create its specific product lines are sufficiently alleged to be trade secrets, even if those processes are described with some understandable level of generality in a complaint. *Applied Predictive Techs., Inc. v. Marketdial, Inc.*, No. 219CV00496JNPCMR, 2020 WL 6940736, at \*22 n.12 (D. Utah Nov. 25, 2020) ("Courts have recognized the appropriateness of pleading trade secrets in general terms in order to avoid publicly disclosing the allegedly secret information in court filings."). In combination with the allegations that Curium endeavored to keep these alleged trade secrets secret and that Curium derived economic benefit from the secrets being not generally known, the court finds that Curium has plausibly alleged trade secrets relating to the commercial scale production of Cu-64, Detectnet™, Copper Cu-64 PSMA I&T Injection, and Ioflupane I 123 injection.

Defendants next argue that "Curium's robust public disclosures of its business processes negate Curium's nonspecific allegations of trade secret protection." ECF No. 44 at 20. However, Curium specifically alleged that while "[c]ertain aspects of Curium's work have been patented[,] . . . numerous other aspects of Curium's Confidential Processes were developed and/or identified

or used during Radford's and Loveless's employment and are not disclosed in patents or publications." ECF No. 1 ¶ 32. Defendants attempt to raise a dispute of fact here, arguing that patents filed by Curium cover the same categories of information as the alleged trade secrets. ECF No. 44 at 24. But at this stage, the court accepts as true Curium's allegations that its trade secrets cover information that has not been made public in its patent filings, and as this court has ruled above, it would be improper to consider the patents and documents that Defendants refer to at the motion to dismiss stage. *See Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 679 F. Supp. 3d 1196, 1211–1212 (D. Utah 2023); *Applied Predictive Techs., Inc. v. Marketdial, Inc.*, No. 219CV00496JNPCMR, 2020 WL 6940736, at *22–*23 (D. Utah Nov. 25, 2020).

Finally, Defendants argue that Curium's complaint rests only on a speculative threatened misappropriation theory, as opposed to an actual misappropriation theory. ECF No. 44 at 27. In connection with this argument, Defendants also argue that Curium's request for damages should be dismissed because damages are not an authorized remedy for threatened misappropriation. *Id.* at 29.

The court need not address the issue of allowable remedies because it finds that while Curium has plausibly alleged a trade secret, it has not plausibly alleged an actual or threatened trade secret misappropriation claim. Curium argues its complaint does not limit itself to a threatened misappropriation theory. It points to allegations in the complaint's causes of action section which state that Defendants "have used or will use Curium's trade secrets" or "have misappropriated or will misappropriate" the Confidential Processes. *See, e.g.*, ECF No. 1 ¶¶ 126–129, 131, 135, 137–138. However, beyond these conclusory allegations, Curium otherwise limits itself throughout the complaint to a threatened misappropriation theory, going as far as to say in the first line of the complaint that "[t]his is an action for threatened misappropriation of trade

secrets." *Id.* ¶ 1; *see id.* ¶¶ 103–123 (outlining allegations of "Defendants' Threatened Misappropriation"); *id.* ¶ 117 (alleging Radford's and Loveless's employment "heighten[s] concerns about the dissemination" of trade secrets).

The court does not base its conclusion solely on how Curium has framed—or did not frame—its allegations, however. Rather, the court considers the substance of the allegations and finds that Curium has not alleged facts that would support a plausible claim of either actual or threatened misappropriation. The relevant allegations in the complaint paint a limited picture: Radford and Loveless knew of the trade secrets, Radford and Loveless left Curium for Nusano without disclosing the move to Curium, Defendants gave assurances to Curium through a Memorandum of Understanding that was signed in April 2024 and that expired in September 2024, Nusano began to build new infrastructure in Utah starting in March 2024, Nusano announced new contracts for Cu-64 and idione-125 (not idione-123, which Curium works with) in mid-2025, and Defendants refused to give additional assurances in August 2025.

In other words, Curium alleges Nusano hired employees from a competitor, agreed to limit the scope of the employees' work for a limited period of time, and now refuses to continue to give assurances indefinitely. This is not enough to state a claim. "[F]actual allegations must be based on more than speculation to survive a motion to dismiss." *IOSTAR Corp. v. Stuart*, No. 1:07-CV-133, 2009 WL 270037, at *6 (D. Utah Feb. 3, 2009). Beyond the conclusory allegations that Nusano has already misappropriated trade secrets, Curium alleges no factual allegations suggesting as much, essentially relying only on the fact that Nusano is continuing to operate and compete in the same industry. *See* ECF No. 56 at 18 (Curium arguing that the complaint's factual allegations include Nusano "proceeding with development even after notice of Curium's concerns").

22

In addition, Curium's "construction of 'threatened' appears to be synonymous with 'risk.' A risk of misappropriation, however, is far too tenuous upon which to justify a remedy as extraordinary as an injunction, or to support a violation of" either act. *IOSTAR Corp.*, No. 1:07-CV-133, 2009 WL 270037, at *5. The speculative nature of Curium's claim is further underscored by the fact that both employees here continue to be bound by non-disclosure agreements, which Curium itself highlights. *Id.*; *see Fair Isaac Corp. v. Gurobi Optimization, LLC*, No. CV 25-00194-RGA, 2025 WL 2636403, at *6 (D. Del. Sept. 12, 2025) (noting the same). Ultimately, the effect of Curium's theory would be to force a "mandatory injunction" or create an "implied statutory non-compete clause" for any employee who "lawfully obtains trade secret information and then leaves his employer to take a position in the same or a similar field." *IOSTAR Corp.*, No. 1:07-CV-133, 2009 WL 270037, at *6; *see AWP, Inc. v. Henry*, No. 1:20-CV-01625-SDG, 2020 WL 6876299, at *4 (N.D. Ga. Oct. 28, 2020) ("At bottom, the mere possession of a trade secret is not enough to state a claim of threatened misappropriation."); *Ciena Commc'ns, Inc. v. Nachazel*, No. 09-CV-02845-MSK-MJW, 2010 WL 3489915, at *4 (D. Colo. Aug. 31, 2010) (noting that "such an absolute rule" would be "essentially imposing strict liability on a corporation that hires a person possessing others' trade secrets").

The court accordingly dismisses the trade secrets misappropriation claims under the UUTSA and the DTSA.

## CONCLUSION AND ORDER

For the above reasons, the court GRANTS Defendants' motions to dismiss the complaint. ECF Nos. 44, 46. It also GRANTS IN PART and DENIES IN PART the motion to incorporate. ECF No. 45.

Signed August 6, 2026.

BY THE COURT

Jill N. Parrish
United States Chief District Judge